S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**STEVEN T. MYGRANT, OSB #03129**
Special Assistant United States Attorney
stevenmyg@co.clackamas.or.us
1000 SW Third Ave., Suite 600
Portland, OR  97204-2902
Telephone:  (503) 655-8431
Facsimile:  (503) 727-1105
Attorneys for United States of America

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:12-CR-00657-SI** |
| v. | **GOVERNMENT'S AMENDED SENTENCING MEMORANDUM** |
| **JACOBO ARMENTA MUNOZ a.k.a. Charly Michael Aguayo-Caro,** | **Sentencing Date: March 10, 2014, at 9:30 a.m.** |
| **Defendant.** | |

The United States of America, by S. Amanda Marshall, United States Attorney for the

District of Oregon, and Steven T. Mygrant, Special Assistant United States Attorney, hereby

submits the following amended sentencing memorandum.

### I.    GOVERNMENT'S SENTENCING RECOMMENDATION

For the reasons set forth below, the government recommends that the Court impose a

sentence of 144 months' imprisonment, a minimum of a five year term of supervised release and

a $100 fee assessment. Such a sentence properly addresses the nature and seriousness of the

offense, provides just punishment, affords adequate deterrence and protects the public from further crimes of this defendant.

## II.    PROCEDURAL HISTORY

1.      The defendant was arrested on state charges for the instant offense on September 18, 2012.  State charges were subsequently dismissed following a federal grand jury's indictment for the instant offense.  On January 11, 2013, the defendant was transferred to U.S. Marshal custody on a federal arrest warrant for the underlying indictment.

2.      On July 24, 2013, the defendant pled guilty to a single-count Superseding Information charging him with Conspiracy to Distribute Heroin in a quantity exceeding one kilogram pursuant to 21 U.S.C. § 841(a)(1) and (b)(1)(A)(i) and §846.  As part of the plea agreement, the defendant admitted his relevant conduct in the distribution of heroin resulted in the death of Michael Rael, for a base offense level of 38, prior to adjustments. Plea Agreement ¶ 7.

## III.    FACTUAL BACKGROUND

**3.**      On September 10, 2012, Michael Rael was discovered deceased sitting in the driver's seat of his vehicle at his residence 5815 SE King Road in Milwaukie, within the District of Oregon.  PSR ¶ 11. Michael Rael was a 23 year-old male who had recently moved to Oregon from New Mexico.  *Id.*  Initial responders discovered heroin paraphernalia in Rael's vehicle. Clackamas County Deputy Medical Examiner, Chris Wright, seized a syringe and plastic packaging with heroin residue.  *Id.*  Oregon State Medical Examiner Dr. Clifford Nelson conducted an autopsy and concluded that the cause of death was an acute heroin overdose.  *Id.*

Once initial responders determined Rael died of a heroin overdose, officers trained in overdose investigations responded to the scene.  Investigators observed recent text messages on

**Government's Amended Sentencing Memorandum**                                          **Page 2**

Rael's phone that were consistent with a drug transaction between Rael and a subject later identified as Ashton Hill. PSR ¶ 12.

Investigators eventually arrested Ashton Hill who acknowledged selling heroin to Rael on September 8, 2012. *Id.* Phone records corroborated this transaction. Hill identified his heroin supplier as a drug trafficking organization. PSR ¶ 15. Hill said he would call a person he knew as "Steven" at 503-954-7161. Steven would take an order for heroin and then direct Hill to meet with a courier at a specific location. *Id.* Hill told investigators that a different person would deliver the heroin. *Id.* Hill told investigators he had purchased heroin from this organization for the past two and a half years. *Id.* Hill said he purchased on average 3-6 grams of heroin per day. *Id.* Over the course of time, investigators estimated Hill purchased over 6 pounds of heroin from this organization. Hill agreed with this estimation. *Id.*

Hill told investigators that Steven had a new courier who he described as a young Hispanic male with acne who drove a new white Dodge car. Hill later told officers he has seen 4-5 couriers and positively identified Charley Aguayo-Caro as a member of the organization. PSR ¶ 16. Hill positively identified multiple members of the organization who had been arrested by law enforcement agencies throughout the Portland metro area in separate heroin trafficking investigations. *Id.*

Hill agreed to assist law enforcement with the overdose investigation. On September 12, 2012, Hill made a recorded call to Steven at 503-954-7161. PSR ¶ 17. Steven told Hill to meet a delivery driver in NE Portland. *Id.* Hill successfully completed the controlled purchase of heroin and positively identified the courier as the same individual Steven had sent to deliver heroin on September 8, 2012, when Hill sold the heroin to Michael Rael. *Id.* Law enforcement subsequently stopped the suspect vehicle and arrested the driver, later identified as Cristian

**Government's Amended Sentencing Memorandum**                                        **Page 3**

Gastelum Gutierrez, a.k.a. Diego Lopez Perez, who swallowed approximately 68 balloons of heroin and cocaine. *Id*. Investigators transported Lopez Perez to Willamette Falls Medical Center where 68 balloons of substances later identified as heroin and cocaine were recovered. *Id*.

When investigators arrested Gastelum Gutierrez, a.k.a. Lopez Perez, they seized a cell phone. Officers observed an incoming call identified as 619-847-3424. PSR ¶ 18. Law enforcement learned from Gastellum Gutierrez that the number was associated to another member of the drug trafficking organization. *Id*. Investigators subsequently obtained a court order for precision location information for the organizational phone identified as 619-847-3424. *Id*. Investigators monitored the location of the phone, which remained active in Oregon and California. *Id*.

On September 18, 2012, investigators continued to monitor the location of the organizational phone identified as 619-847-3424. PSR ¶ 19. Officers monitored the phone northbound on Interstate 5 and positively identified the vehicle as a white Dodge Charger. *Id*. As the vehicle entered the Portland metro area, investigators initiated a traffic stop for a traffic violation. *Id*. Stidham contacted two individuals within the vehicle. *Id*. The driver, identified as the defendant, Jacobo Armenta Munoz, a.k.a. Charly Aguayo Caro, was unable to produce a valid driver's license. *Id*. The passenger, identified as Cesar Pena Acosta, was found in possession of the phone identified as an organizational phone by Gastelum Gutierrez. *Id*. Pena Acosta subsequently admitted he was a member of the drug trafficking organization. PSR ¶ 21.

Officers seized a phone in the center console that was later identified as the new customer phone. PSR ¶ 19. Pena Acosta said that the defendant would take the orders from customers and then direct couriers (i.e. Gastelum Gutierrez and himself) to deliver heroin to customers. PSR ¶

**Government's Amended Sentencing Memorandum**                                      **Page 4**

22. Officers also seized over $3,000 in cash from the defendant. PSR ¶ 19. A trained drug-detecting canine subsequently alerted to the presence of narcotics on the cash. *Id*.

Following the arrest of the defendant and Pena Acosta, Deputy Stinson and FBI Special Agent Dennard continued with their investigation into the drug trafficking organization. Through the use of the newly identified customer phone found in the center console of defendant's vehicle, officers contacted drug customers of the organization. PSR ¶ 23. An identified customer of the drug trafficking organization provided several previous phone numbers she had used to contact the organization. *Id*. Investigators researched the phone numbers provided by the government witness and learned that several of the phone numbers had been identified in previous heroin trafficking investigations by other law enforcement agencies. *Id*.

### *Portland Police Bureau February 2012 Investigation*

On February 7, 2012, Portland Police Drugs and Vice Division (PPBDVD) conducted a heroin trafficking investigation using a separate cooperating informant. PSR ¶ 30. Several subsequent calls were made to arrange a heroin transaction. *Id*. The dispatcher took the heroin order over the phone and sent a courier to make the delivery. Following a stop of the suspect vehicle, officers found a sandwich bag containing multiple multi-colored balloons, two disposable cups each containing multiple multi-colored balloons and a disposable cup containing $1,799 in cash. *Id*.

### *Beaverton Police Department Investigation August 2012*

Investigators learned that on August 17, 2012, Beaverton Police used a cooperating informant to order heroin from a drug trafficking organization. PSR ¶ 31. The cooperating informant placed a recorded call to 818-917-3785 to the dispatcher to arrange the delivery of

**Government's Amended Sentencing Memorandum**                                **Page 5**

heroin to the informant near the Kohls on Canyon Road in Beaverton.  *Id.*  Following a stop of

the suspect vehicle and detention of the two occupants, officers searched the vehicle and found

46 balloons containing heroin, seven yellow balloons containing cocaine and $172 in cash.  *Id.*

Officers arrested two individuals in the vehicle identified as Cesar Pena Acosta and Miguel

Langarcia Pasos.

*Woodburn Police Department Investigation June 2011*

Clackamas County investigators continued to research other phone numbers associated

with this dispatch organization.  Investigators learned that on June 26, 2011, Woodburn Police

used a cooperating informant to order heroin from a dispatch organization. PSR ¶ 27.  The

informant agreed to make several recorded calls to his heroin supplier identified as Steven for the

purchase of 500 grams of heroin for a total of a $28,000 transaction.  *Id.*  The informant and

Steven agreed to meet near the area of the Clackamas Town Center.  *Id.*  After a series of calls

organizing the transaction, Woodburn Police observed a suspect conducting counter-surveillance

near Nordstrom's in the Clackamas Town Center. PSR ¶ 28.  Officers contacted the subject and

detained the subject who was identified by the informant as a member of the drug-trafficking

organization.  *Id.*

Woodburn Police officers continued to use the cooperating informant.  Officers were able

to identify and apprehend two additional members of the drug trafficking organization near the

Fred Meyer store at SE 82nd Avenue and SE Johnson Creek. PSR ¶ 29.  Officers detained two

subjects.  Officers seized cell phones from all three subjects and determined each arrestee was

communicating with the same subject, listed in their phones as "Charly" and "Esven."

**Government's Amended Sentencing Memorandum**                                    **Page 6**

*Multnomah County Sheriff's Office Investigation 2008*

Further investigation revealed that the Multnomah County Sheriff's Office initiated an investigation into the defendant in a 2008 heroin trafficking investigation.  PSR ¶ 25. Investigators identified a cooperating witness who positively identified the defendant as a subject he knew as "Steven." PSR ¶ 26.  The cooperating witness told investigators he was a driver for the defendant around 2007-2008.  *Id*.  The cooperating witness further explained the defendant sold 100-150 balloons each day throughout the Portland metro area.  *Id*.

## IV.    SENTENCING CONSIDERATIONS

While not bound by the Sentencing Guidelines, district courts must consult the Guidelines and take them into account when sentencing.  *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 767 (2005).  Even though the Guidelines are advisory, they remain influential in an effort to ensure national consistency.  *Gall v. United States*, 128 S. Ct. 586, 596 (2007) ("to secure nationwide consistency, the Guidelines should be the starting point and initial benchmark" for sentencing); *see also United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) ("[The] continuing duty of district courts to consult the Guidelines is statutory.").

After the parties are given a chance to argue for a sentence they believe is appropriate, the Court should consider the § 3553(a) factors and decide if they support the sentence suggested by the parties.  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (citing *Gall,* 128 S. Ct. at 596-97, n.6).  The Court must make an individualized determination based on the facts, may not presume that the Guideline range is reasonable, and should not give the Guidelines factors more or less weight than other § 3553(a) factors.  *Id*.  If the Court decides an outside-Guidelines sentence is warranted, the Court must ensure the justification is sufficiently compelling to

**Government's Amended Sentencing Memorandum**                                     **Page 7**

support the degree of variance. *Id*. And finally, once a sentence is selected, the Court must explain it sufficiently to permit meaningful appellate review. *Id*. at 992.

Factors to consider under 18 U.S.C. § 3553(a) include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to provide just punishment for the offense; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to protect the public from further crimes of the defendant; and the need to provide the defendant with needed training, care, or treatment.

### V.    PLEA AGREEMENT AND RECOMMENDED SENTENCE

#### a.  RELEVANT CONDUCT

The parties agree that defendant is responsible for the distribution of heroin in a quantity exceeding one kilogram. The parties further agree that the defendant's distribution resulted in the death of Michael Rael, for a base offense level of 38, prior to adjustments. Plea Agreement ¶ 7. PSR ¶ 38.

#### b.  MANDATORY MINIMUM SENTENCE

The parties agree that the quantity exceeding one kilogram of heroin distributed by the defendant triggers a mandatory minimum sentence of ten years' imprisonment pursuant to 21 U.S.C. §841(b)(1)(A)(i). Plea Agreement ¶ 9.

#### c.  ACCEPTANCE OF RESPONSIBILITY

The government agrees with the PSR that a two-level reduction to recognize defendant's acceptance of responsibility and admission of relevant conduct is appropriate pursuant to U.S.S.G. § 3E1.1(a). PSR ¶ 34-36.

**Government's Amended Sentencing Memorandum**                                **Page 8**

### d.  ADDITIONAL ADJUSTMENTS

Based on the defendant's acceptance of responsibility and admissions to his relevant conduct, the parties agreed not to seek an enhancement for defendant's role as manager, organizer or leader in the drug trafficking organization.  The government understand the PSR recommends a two-level increase based on role under U.S.S.G. § 3B1.1(c).

The parties further recommend a three-level adjustment downward for the factors listed in 18 U.S.C. §3553(a).  PSR ¶ 9.  Furthermore, the government will recommend an additional one-level adjustment downward for reasons to be presented at sentencing.

### e.  GUIDELINE CALCULATION

The government agrees with the PSR that defendant has a criminal history category level II pursuant to §4A1.1 based on one prior criminal conviction for two criminal history points. PSR ¶37-38.

Pursuant to U.S.S.G. § 2D1.1(1)(2), the base offense level is 38 since the offense of conviction established that death resulted from the use of the heroin distributed by the defendant's drug trafficking organization.  Following a two-level decrease for acceptance of responsibility, a three-level decrease for the factors listed in 18 U.S.C. §3553(a) and a one-level decrease for reasons presented at sentencing, the government calculates an adjusted offense level of 32.  The anticipated guideline range for a level 32 offense and criminal history category II is 135-168.  Based on the stipulation of the parties, the government encourages the Court to adopt and ratify the joint recommendation of the parties of the 144 month term of imprisonment followed by a minimum term of five years supervised release.

**Government's Amended Sentencing Memorandum**                              **Page 9**

## VI.    CONCLUSION

The defendant engaged in a significant heroin trafficking operation that historically distributed large quantities of heroin that resulted in the death of Michael Rael.  It is the government's position that the proposed recommendation of 144 months' imprisonment properly addresses the nature and seriousness of the offense and provides just punishment to the defendant for his actions.  It is also promotes respect for the law and affords adequate deterrence to criminal conduct.  Pursuant to defendant's agreement to pay restitution in the plea agreement, the government requests the defendant be ordered to pay restitution to the victim's family member identified in the presentence report, in the amount of $8,302.02.  For the reasons set forth above, the government urges the Court to find that a sentence of 144 months' imprisonment, followed by a minimum of five years of supervised release, a fee assessment of $100 and restitution in the amount of $8,302.02 satisfies the requirement of 18 U.S.C. § 3553(a) as a "sentence sufficient, but not greater than necessary" to meet the purposes of § 3553(a)(2).

Dated this 6th day of March 2014.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney

*s/ Steven T. Mygrant*
STEVEN T. MYGRANT, OSB #03129
Special Assistant United States Attorney
(503) 655-8431

**Government's Amended Sentencing Memorandum**                              **Page 10**